# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-1056V
Filed: April 23, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| AMANDA L ISAACSON, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Interim Attorneys' Fees and |
| | * | Costs; Hourly Rate |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Scott Taylor, Esq.*, Urban and Taylor, S.C., Milwaukee, WI, for petitioner.
*Darryl Wishard, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On October 29, 2014, Amanda Isaacson ("Ms. Isaacson," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that she developed glomerular nephritis as a result of receiving an influenza vaccination on November 3, 2011. Petition ("Pet."), ECF No. 1. Petitioner now requests an award of interim attorneys' fees and costs.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

The petition was filed on October 29, 2014; petitioner initially alleged that she developed glomerulonephritis, postural tachycardia syndrome ("POTS"), and headache as a result of the flu vaccine, but only proceeded to hearing on her claim for glomerulonephritis. *See* Pet., ECF No. 1. Petitioner filed medical records through November and December of 2014. *See* Pet. Ex. 1-10, ECF No. 7; Pet. Ex. 11, ECF No. 8. Respondent filed his Rule 4(c) Report on February 6, 2015, recommending that compensation be denied. ECF No. 13.

Petitioner filed an expert report from Dr. Younger, a neurologist, and supporting medical literature. Pet. Ex. 15-16, ECF No. 22; Pet. Ex. 17-18, ECF No. 23; Pet. Ex. 19, ECF No. 24.

This case was reassigned to me on January 14, 2016. ECF No. 27.

On March 1, 2016, respondent filed an expert report from Dr. Low, a neurologist, and supporting medical literature. Resp. Ex. A-B, ECF No. 29; Resp. Ex. C-K, ECF No. 30. On March 2, 2016, respondent filed an expert report from Dr. Kaplan, a nephrologist, and supporting medical literature. Resp. Ex. L-P, ECF No. 31.

Following a status conference on March 30, 2016, petitioner was ordered to file an expert report from a nephrologist by May 31, 2016. Scheduling Order at 1, ECF No. 32. Petitioner was also ordered to submit a settlement demand to respondent within 15 days of filing her expert report. *Id*. at 2.

After requesting and receiving four extensions of time, petitioner filed an expert report from a nephrologist, Dr. Jan Kielstein, along with supporting medical literature, on January 31, 2017. Motion for Extension of Time ("MFET"), ECF No. 34; Second MFET, ECF No. 35; Third MFET, ECF No. 36; Fourth MFET, ECF No. 37; Pet. Ex. 21-38, ECF No. 38. Petitioner was ordered to file a status report confirming that a settlement demand had been submitted to respondent by February 15, 2017. Non-PDF Order, issued Jan. 31, 2017. On February 14, 2017, petitioner filed a status report requesting until March 31, 2017, to submit a settlement demand to respondent. ECF No. 39. The deadline for petitioner to submit a settlement demand was extended accordingly. Non-PDF Order, issued Feb. 14, 2017. Petitioner filed a status report on April 3, 2017, three days after the deadline, requesting additional time to submit a settlement demand. ECF No. 40. The deadline was extended to April 14, 2017. Non-PDF Order, issued Apr. 3, 2017. Petitioner failed to comply with this Order.

A status conference was held on April 26, 2017, following petitioner's failure to comply with the Court's Order issued on April 3, 2017. Scheduling Order at 1, ECF No. 41. Petitioner requested thirty days to file updated medical records and a status report confirming that a settlement demand was submitted to respondent. *Id*. A deadline was set for May 26, 2017. *Id*. at 2.

Respondent filed a status report indicating that he was not interested in settlement, along with a responsive expert report from Dr. Kaplan on July 4, 2017. Resp. S.R., ECF No. 46; Resp. Ex. Q, ECF No. 47.

2

During a status conference held on October 5, 2017, petitioner advised that she was reconsidering her claim for POTS and may not pursue it at an entitlement hearing. Scheduling Order at 1, ECF No. 48. Petitioner was ordered to file a status report advising whether she intended to pursue a claim for POTS. *Id*. Petitioner was also ordered to file a supplemental expert report from Dr. Kielstein, addressing the concerns raised by Dr. Kaplan in his second report. *Id*.

On December 4, 2017, petitioner field a status report stating that she would not continue to pursue a claim that the flu vaccine caused her to develop POTS. ECF No. 50.

Petitioner filed a supplemental expert report from Dr. Kielstein on January 4, 2018. Pet. Ex. 41, ECF No. 51.

A Rule 5 conference was held on February 27, 2018. Scheduling Order, ECF No. 53. I noted that respondent's expert, Dr. Kaplan, suggested petitioner had a preexisting silent kidney disease, an ongoing chronic process. *Id*. at 2. In light of Dr. Kaplan's position, I asked petitioner whether she would like to amend the petition to include a claim for significant aggravation. *Id*. Petitioner did not file an amended petition.

A prehearing order was issued on April 27, 2018, setting this matter for an entitlement hearing on January 24 and 25, 2019 in Washington, D.C. Prehearing Order, ECF No. 59.

Petitioner filed her pre-hearing brief on November 29, 2018. ECF No. 60. Respondent filed his pre-hearing brief on December 10, 2018. ECF No. 63.

An entitlement hearing was held in Washington, D.C. on January 24 and 25, 2019. Subsequently, petitioner filed demonstrative exhibits as Pet. Ex. 50-51 and respondent filed an updated CV for Dr. Kaplan. ECF Nos. 76-77. The parties were ordered to file post-hearing briefs by May 28, 2019. Non-PDF Order, dated Feb. 26, 2019.

On April 1, 2019, petitioner filed a Motion for Interim Attorneys' Fees and Costs. Motion for Interim Fees, ECF No. 80. Petitioner requests attorneys' fees in the amount of $78,788.00 and attorneys' costs in the amount of $16,717.25, for a total amount of $95,505.25. *Id.* at 9. In accordance with General Order #9, petitioner's counsel represents that petitioner did not incur any out-of-pocket expenses. *See* Supplement Statement of Costs, ECF No. 80-7.

On April 2, 2019, respondent filed a response to petitioner's Motion for Interim Fees. Response, ECF No. 81. Respondent deferred to the special master "to determine whether or not petitioner has met the legal standard for an interim fees and costs award" but was "satisfied that the statutory and other legal requirements for an award of attorneys' fees and costs" had been met. *Id*. at 2. Respondent provided no specific objection to the amount requested or hours worked, but instead, "respectfully recommend[ed] that the Special Master exercise [her] discretion and determine a reasonable award." *Id*. at 3.

On April 4, 2019, petitioner filed additional documentation of her attorneys' costs. ECF No. 82.

This matter is now ripe for decision.

## II. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

**A.     Availability of Interim Fees**

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F. 3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id*. at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id*. at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

This matter has been pending for approximately four and a half years. While an entitlement hearing has been held, this matter is not yet ripe for the issuance of a decision. Therefore, an award

4

of interim fees and costs is appropriate so that counsel is not unduly financially burdened during protracted litigation.

**B.  Reasonable Hourly Rate**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Petitioner's counsel practices in Milwaukee, WI. Other special masters have found Mr. Taylor entitled to forum rate. *See Manning v. Sec'y of Health & Human Servs.*, No. 14-753V, 2016 WL 4527582, at *3 n.3 (Fed. Cl. Spec. Mstr. July 29, 2016); *Eiland v. Sec'y of Health & Human Servs.*, No. 16-603V, 2017 WL 7688081, at *1 (Fed. Cl. Spec. Mstr. Oct. 17, 2017). Therefore, forum rates apply in this case.

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner has requested the following rates for Mr. Taylor: $365 for work performed in 2014; $375 for work performed in 2015; $385 for work performed in 2016; $400 for work performed in 2017; $410 for work performed in 2018; and $420 for work performed in 2019. Motion for Interim Fees at 5-6. Mr. Taylor has been practicing since 1992. *See* Affidavit of Scott B. Taylor, ECF No. 80-1. Mr. Taylor is listed as the attorney of record in 14 Vaccine Program cases and has been practicing in the Program since 2009.

---

[3] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf (last visited Apr. 22, 2019); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*,
http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited Apr. 22, 2019); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule*: 2018, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf (last visited Apr. 22, 2019); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2019*,
http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf (last visited Apr. 22, 2019).

Mr. Taylor has previously been awarded his requested hourly rates for work performed from 2014 through 2016. *Manning*, 2016 WL 4527582, at *4; *Eiland*, 2017 WL 7688081 at *1. In *Eiland*, Mr. Taylor requested an hourly rate of $400 for work performed in 2017 but was awarded an hourly rate of $385; the special master cited Mr. Taylor's "lack of attention to deadlines and filing procedures" as the reason for the lower rate. 2017 WL 7688081 at *1. Mr. Taylor appeared to have similar difficulty in meeting deadlines in this matter. Following numerous extensions of time and several missed deadlines, a status conference was held on April 26, 2017, during which Mr. Taylor was reminded of the need to comply with Court orders. *See* Scheduling Order at 1-2, ECF No. 41. Accordingly, I will follow *Eiland* and award Mr. Taylor a rate of $385 for work performed in 2017.

While Mr. Taylor is an experienced litigator, his lack of attention to deadlines and filing procedures makes it appropriate to award him correspondingly lower rates within the respective *McCulloch* ranges for 2018 and 2019. *See Eiland*, 2017 WL 7688081 at *1 (noting that one of the *McCulloch* factors considered in determining an appropriate hourly rate is the quality of work performed by the attorney); *Brierton v. Sec'y of Health & Human Servs.*, No. 15-1357V, 2018 WL 6539750, at *2 n.5 (Fed. Cl. Spec. Mstr. Oct. 31, 2018) (noting that, in a case where petitioner's counsel had difficulty following Court orders and meeting deadlines, the quality of work performed did not justify a higher hourly rate). Accordingly, I award Mr. Taylor rates of $396 for work performed in 2018 and $404 for work performed in 2019.[4]

Based on the rates awarded herein, petitioner's attorneys' fees are reduced from $78,788.00 to $77,005.70.[5]

## C. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are

---

[4] These rates were found using the PPI-OL calculation method detailed in the OSM Hourly Rate Fee Schedules for 2018 and 2019 and rounded to the nearest whole dollar.

[5]

| Year | Rate Awarded | Hours Billed | Subtotal |
|---|---|---|---|
| 2014 | $365.00 | 30.5 | $11,132.00 |
| 2015 | $375.00 | 25 | $9,375.00 |
| 2016 | $385.00 | 12.7 | $4,889.50 |
| 2017 | $385.00 | 31.6 | $12,166.00 |
| 2018 | $396.00 | 24.4 | $9,662.40 |
| 2019 | $404.00 | 67.7 | $27,350.80 |
| 2019 Travel (Half Rate) | $202.50 | 12 | $2,430.00 |
| | | **Total** | **$77,005.70** |

6

"excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of petitioner's application, the undersigned finds Mr. Taylor billed several paralegal tasks at an attorney rate rather than a paralegal rate, including ordering medical records and filing exhibits.[6] Additionally, Mr. Taylor billed administrative tasks at an attorney rate, including scheduling status conferences.[7] Mr. Taylor also billed his full hourly rate for travel to and from a client meeting in Wales, WI.[8] For these reasons, the undersigned finds that petitioner's attorneys' fees should be reduced by 15%. Accordingly, $65,454.85 is awarded in attorneys' fees.

**D.      Reasonable Costs**

Petitioner requested a total of $16,717.25 in attorneys' costs. Motion for Interim Fees, ECF No. 80. The requested costs include $5,000.00 in fees to expert Dr. Younger, $3,900.00 in fees to expert Dr. Kielstein, $4,013.73 in travel costs, and $1,914.22 in costs associated with obtaining medical records. Motion for Interim Fees, Ex. C, ECF No. 80-3. The undersigned finds petitioner's requested costs to be reasonable.

---

[6] *See, e.g.,* Motion for Interim Fees, Ex. B, ECF No. 80-3 at 2 ("Draft and file Statement of Completion and Notice of Filing Froedtert Records"); *id.* at 3 ("Draft Notice of Filing and file Affidavit of Dr. Carey"); *id.* at 4 ("Draft letter and prepare jump drive with all medical records and expert reports for review").

[7] *See, e.g.*, Motion for Interim Fees, Ex. B, ECF No. 80-3 at 2 ("email chain, re; scheduling status conference"); *id.* at 6 ("scheduling telephone conference").

[8] Motion for Interim Fees, Ex. B, ECF No. 80-3 at 2 ("travel to and from Wales").

### IV. Total Award Summary

Based on the foregoing, the undersigned **awards the total of $82,172.10**,[9] representing reimbursement for attorneys' fees in the amount of $65,454.85 and costs in the amount of $16,717.25, in the form of a check made payable jointly to petitioner and petitioner's counsel, Scott Taylor, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

<u>s/ Mindy Michaels Roth</u>
Mindy Michaels Roth
Special Master

---

[9] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.